Good morning, Your Honor. Good morning. I'm Amitai Schwartz, appearing on behalf of Guillermo Solorio, Jr. I'd like to reserve two minutes for rebuttal, if I may. Okay, thank you. Thank you. This is obviously an application to file a second or successive petition for writ of habeas corpus. Underlying the names, and one, both of which deal with critical evidence against my client, Mr. Solorio, evidence that was introduced at his trial in Monterey County, California. The suppressed or nondisclosed evidence concerns a witness named, who I'm going to use the same terminology that was used throughout the case, rather than his given name. I'm going to call him Memo, because that's what appears in the. Well, okay, we have Panetti. In Panetti, the Supreme Court considered a claim that could not have been brought at the time of the first habeas petition, because it did not exist. Here, the factual predicate existed at the time of Solorio's first habeas petition. He just didn't know about the alleged Brady evidence. So why is that not dispositive, a dispositive distinction? Well, with regard to the Gage case, I mean, it's an open question. As reflected in a couple of subsequent unpublished opinions, and as the Gage case recognized when it said that there was significant question about the policy, the Gage court felt that it was bound by Buenstro, which was a IAC case, to say that the facts existed at the time of the first habeas petition, but the facts did not exist at the time of Solorio's  And so I would like to argue is to move past Gage, inasmuch as it's an open question and there are two other cases on the calendar today that are going to directly Why doesn't that foreclosure argument, why doesn't the text of 2244 foreclosure argument? Well, if that were the case, then no one could ever raise a Brady claim under 2244, because here the reasonable diligence was the diligence that should have been undertaken by the government to reveal these two sets of suppressed Brady material. Instead, it was diligence on behalf of my client who had to invoke California discovery procedures post-trial to unearth 4,000 pages of documents and to discover these two sets of Brady materials hidden there. So with respect to the diligence, I think my client was very diligent, and by unearthing this material, which the burden was initially on the government to produce. I didn't get why these two, okay, the Fonseca, was it Fonseca tapes? Yes. They knew about Mr. Fonseca, right? Fonseca was a tape. Okay. They knew about Fonseca. I mean, he wasn't a mystery person. No. In fact, his grand jury testimony was read into the record at trial, because he said he didn't remember when he got to trial. And so the whole thing with Fonseca is that, well, maybe there was a 38 and maybe there wasn't? Is that the big – is that the key impeachment from the Fonseca? There are three issues with the Fonseca tape. Number one, showing that he was angling for favors from the government when he was interviewed by the two officers at 3 o'clock in the morning, and they were trying to get him to say that my client had a 38 revolver. He was – that goes to the fact that he was working – or he was angling for favors, which is a classic impeachment Brady-type violation. Secondly, Fonseca said, and it doesn't appear anywhere in the police reports, and it doesn't appear in the police notes, Fonseca said Capone, who is my client, Solario, Capone wouldn't have the balls to do it. He doesn't do – excuse me – shit like that. That's exculpatory right there, but it doesn't appear in the police report. It doesn't appear in the notes, and it didn't come out at trial. The third issue with regard to Fonseca is the really important thing is this 38 revolver is the only direct evidence that directly connects Solario to the crime in the sense – and it's very equivocal. You've got a trial – Mr. Schwartz, may I interrupt you for a second? Wasn't the Fonseca tape mentioned in the police reports discovery of which was made to your client in advance of trial? Yes, it was mentioned. Why couldn't he move then in advance of trial to get the Fonseca tapes? How can he show due diligence as to the Fonseca tapes? Well, the prosecutor, when he put his declaration in the state court habeas proceeding, said he couldn't remember whether he disclosed them or not. The burden was not on my client to go for the tapes. The burden was on the government to produce them. Your client had no tape, no burden at all to use due diligence to discover possible impeachment material? Well, he did, but I think that the police report can say there are tapes, but if the tapes were not turned over, I think a reasonable assumption is that they no longer existed or they were copied over or something happened to them because it wasn't the client's or the client's lawyer's responsibility to go after something as exculpatory as those tapes. Fonseca testified. Fonseca did not testify. Fonseca's testimony was read into the record. His grand jury testimony. He was never cross-examined. What was read into the record was that Laredo did it, not Solorio, right? So what you're talking about is this statement, quote, wouldn't have had the balls enough to kill Chente, unquote. That isn't any better if, you know, saying someone else did it's better than wouldn't have had the, you know, quote, unquote, huevos to do it. Well, that's precisely the kind of thing that a jury ought to evaluate. Well, but the court said that it was cumulative, right? Or duplicative or as far as that goes. Even if, so you've got the additional problem of that even if you can get somewhere with it, you still have to be able to show innocence, right? Well, to show a reasonable likelihood. I have to make out a prima facie case. Right. And the court said you didn't make it, right? Excuse me? The court said you didn't make it, right? That's right. So, I mean, you have all of, we have the hurdles that we say in the first place, but there's always an option for people that can make a prima facie case of innocence to get before this court. I mean, it's just, but you're trying to get here otherwise. You're trying to get around 2244 and as far as that goes, right? Well, I'm not trying to get around it. I'm trying to say that we meet the elements of it. And I think we meet the elements well. I mean, it's a cumulative problem. You've got the memo informant issue. You've got the California court of appeal writing that the trial court could have reasonably assumed or decided that Memo was not a police informant. And then it turns up after this, you go through these 4,000 pages of disclosed documents, that there are five police reports showing that he was angling for favor and getting favors before he even testified. Well, he was impeached with a lot of, he hardly came off as a Boy Scout. Well, but none of these guys, none of these guys were Boy Scouts. I mean, given the nature of the case, but he wasn't impeached. He was, he had a criminal record like everybody else in this case. You only have 45 seconds.  Thank you. Okay, thanks. Good morning, Pam Critchfield for the state of California. Petitioner must make a prima facie showing that the language of 2244b2b has been met. And he simply has not done that. The evidence that he has put forward is in accumulative impeachment evidence. As far as the main witness, whose name, who goes by the name Memo. Where in the record, is there any evidence, Ms. Critchfield, that Solorio was aware that Memo was working as an informant for the police? It is, it's in the transcript that I attached as Exhibit A to my opposition. I attached Officer Solis' testimony. And he says on the record, and I don't have the page site for you, Your Honor, but he says on the record that Memo, Memo, the witness was a CI. Was a CI. Was a CI for us. Confidential informant. Yes, a CI. In the audience who don't know what CI means. Okay, he was a confidential informant. The five reports that were not provided until 2010, there was one favor, there was one thing that was given, which was the traffic ticket was fixed. Driving on a suspended license. And apparently he got that, the witness got that ticket and gave some information over about some stolen vehicles. And then that ticket, they ended up making that ticket go away. That was not disclosed. The trial was actually in Santa Clara County, but all the people were from Monterey County. And for whatever reason, the DA did not get those reports according to his declaration. So, all right, if you look at Gage. Okay. This court found that the petitioner's Brady claim developed, quote, unquote, at the latest when the state trial judge disclosed the contents of the victim's medical records. Why shouldn't we read Gage to mean that a Brady claim ripens only when the facts supporting a Brady claim are disclosed as opposed to at the time of trial? Because that you would have to broaden the rule in Panetti then to say that the claims that, so that it permits claims that were right. Those facts existed at the time of trial. You would have to broaden the rule so that the facts were right, claims that were right at the conclusion of the first habeas proceeding. Well, there's a little bit of tension there. There's a little bit of tension between Gage and then I think Gwen Rostrow as well. There's, if you say that it developed at the latest disclosed to the victim, isn't that a little bit at odds with Gwen Rostow, Rostrow? Which fact, those facts also developed at the time of trial. Right. They said it, but when the court said at the latest when it sort of, is that just dicta or? In Gage? Yes. And I think Gage is specifically on those, the facts of Gage were, it was very obvious that that petitioner had known about, that's what I believe the court was commenting on. That petitioner knew about those medical, those victims, that victim's medical reports. At the time, he brought his new trial motion, I believe. And I think that the court was relying on the diligence prong of 2244B2B to say you weren't diligent in this case. Well, okay. Then if you look at Magwood, Magwood says in their seven justices agreed that a petitioner must have had a full and fair opportunity to raise a claim in a first habeas petition for a later petition to be deemed second or successive. So how can a petitioner have a full and fair opportunity to raise a Brady claim in a first petition if he didn't even know about the suppressed evidence? That was the dissent, wasn't it, in Magwood that said that? But it was... Were there seven justices that... That said you have to have a full and fair opportunity. So I'm asking you... Well, that language, I agree, is somewhat confusing. The statute, 2244B2B, if you read the literal language, you can get through the statute. A petitioner can show, make a prima facie showing of the diligence and the fact that the evidence that he has or she has would show by clear and convincing evidence that they were actually innocent. What do you have in your arsenal to say that Congress meant in passing 2244B that even a petitioner who couldn't find Brady material, which was suppressed by the government, is subject to this stronger review, that he has to show basically actual innocent, he just doesn't get a new shot, even though the government withheld the Brady material? I mean, I'm not talking about these guys.  I'm talking about in general. The language of the statute. Did you have anything? Yes. The language of the statute. The bare words of the statute, you say you win. Do you have anything else that we know this is what they wanted to do? As far as Congress goes... Yeah. No. Okay. As far as the court, I can compare it to the Panetti decision. Okay. So you're going with... The interpretation of it by the Supreme Court. I guess you're going with Panetti and Wainrostro, right? Yes. Okay. And what they say that those words mean. Yes. Okay. I just wanted to know if there was anything else. All right. And why we might need a published opinion in this case. Because someone needs to say something. Yes. And, you know... Whether it's what you want us to say or whether it's what the petitioner wants us to say, someone needs to say something. But you think that Mr. Solario didn't even get past the first hurdle, diligence? Or do you think diligence... I argued that and I stand by that. But even assuming he didn't, he got by diligence, I would say he certainly didn't get by the second prong. Okay. And honestly, he did not get by the... If you look at it on a Brady analysis, he doesn't get by that. Because you find it's immaterial or irrelevant? I think immaterial. It's just not prejudicial. It's cumulative impeachment. And Fonseca, they knew that the tapes... The fact that there were tape recordings of his interview was disclosed in the police report. Are you saying with regard to Solario that we don't need to get to the second prong of the 2244B problem? The actual innocence prong? I would say no, you get to both prongs. All right. If there are no further questions, I'll submit it. I think we appear to have additional questions. Thank you. Let me just address the diligence, if I may. I think Petitioner's sitting in a jail cell. He doesn't have counsel. The California passage of the statute in 2003 that says capital defendants and lifers can seek post-trial discovery, you know, it's not something that appears on the front page of the paper or on the news reports. He learns about it, as he says in his declaration that we filed with the reply. He learns about it because he had heard through the grapevine that some people had recanted. At that point, he asks, what do I do? And as soon as he finds out what to do, he files the motion for the discovery. We then use up approximately five years in exhausting state remedies. You know, he's working as fast as he can with the tools. Wait, I thought he sought discovery in 2010. He did. He got his discovery. Okay. They passed the law in 2003, but he hasn't heard it through the prison grapevine, is what you're saying. And so he waits until 2010 to seek discovery. That's right. All right. So I know there's three cases that are sort of related. Are any of you pro bono counsel on this? Or any what? Any lawyers pro bono counsel? I know we have a federal defender, but are you a pro bono counsel? No, I'm CJA. Oh, CJA. Okay. Well, I always just like to thank counsel for taking these cases. It's helpful, particularly when we need to publish. Thank you.
judges: Callahan, Bea, Restani